UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                            :
SEAN MANION,                                :    CASE NO. 1:17-cv-1886
                                            :
                Plaintiff,                  :
                                            :
vs.                                         :    OPINION AND ORDER
                                            :    [Resolving Docs. 21, 26]
DEMANDWARE, LLC, &                          :
SALESFORCE.COM, INC.                        :
                                            :
                Defendants.                 :
                                            :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Sean Manion sues Defendants Demandware, LLC and Salesforce.com, Inc., alleging violations of the Family Medical Leave Act (FMLA) and Americans with Disabilities Act (ADA).[1] The Defendants move for summary judgment and to strike a declaration submitted by Plaintiff Manion.[2]

For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment. The Court **DENIES AS MOOT** the motion to strike.

## I. FACTUAL BACKGROUND

In September 2013, Defendant Demandware hired Plaintiff Manion as a regional sales director.[3] In this lawsuit, Manion claims that Demandware fired him because he used rights under the FMLA and impaired his ability to use rights given by the FMLA.[4] Manion also claims that Demandware violated rights owing under the Americans with Disability Act.[5]

In 2014, Demandware transferred Plaintiff Manion to the "Strategic Programs and New Technology Team."[6] In that position, Manion was charged with prospecting and selling

---

[1] Doc. 1.
[2] Doc. 21; Doc. 26.
[3] Doc. 24-2 at 2, 5.
[4] Doc. 1 at ¶¶ 14–22.
[5] *Id.* at ¶¶ 23–38.
[6] *See* Doc. 23-3 at 89. 103; Doc. 21-1 at 7; Doc. 25 at 7.

Demandware's new point-of–sale product, "Store," to charter customers.[7] Charter customers are customers willing to be early adopters of new software and assist the software developer in testing that product.[8]

Manion received good performance reviews after his transfer through 2015.[9] He was even admitted to the "President's Club," which is a "rewards club . . . for people that overachieve their goals."[10]

In 2016, Plaintiff Manion developed colon problems.[11] Manion was admitted to the hospital on March 27 and underwent emergency surgery the following day.[12] As a result of this surgery, Manion took FMLA leave until mid-May, 2016.[13]

Around the same time that Manion underwent surgery, Defendant Demandware began eliminating the Strategic Programs team that Manion had earlier been assigned to.[14] With the elimination of the Strategic Programs team, Defendant Demandware planned to assign responsibility for selling Store to the company's nationwide sales team instead of continuing to pursue charter customers.[15]

Because Store was a new product, Demandware planned to create a "subject matter expert" position to assist the nationwide sales team.[16] Manion was a logical person to fill this position. This person would provide training and other support to sales representatives, gradually transitioning from a more active sales role to a support role as the sales team became more familiar with the product.[17]

Plaintiff Manion has produced significant evidence suggesting that Demandware initially

---

[7] *Id.* at 16.
[8] *See id.*
[9] Doc. 25-2 at 20–24.
[10] *Id.* at 22; Doc. 25-3 at 21; Doc. 25-5 at 16.
[11] Doc. 25-5 at 2; Doc. 25-4 at 3.
[12] *Id.* at 3.
[13] *See id.* at 3–4.
[14] *See* Doc. 25-5 at 28.
[15] *See* Doc. 25-3 at 5.
[16] *See* Doc. 25-5 at 30.
[17] Doc. 25-3 at 6–7.

Case No. 1:17-cv-1886
Gwin, J.

planned to place him in the subject matter expert role. For instance, in Manion's annual performance review, his supervisor noted that Manion would be a good fit for this specialist role.[18] Moreover, Manion testified in his deposition that he spoke to Brian Callahan, a corporate vice president in charge of sales at Demandware and later at Salesforce, on April 26 about "what [his] new role would be" and who his "new manager would be."[19] Manion was told that he was going to be the subject matter expert and would be reporting to Vicky Aisenberg.[20]

On May 16, 2016, Plaintiff Manion emailed Callahan to inform him that he would return to work beginning on May 17, 2016.[21] Manion noted that he would have "some restrictions [they] need[ed] to speak about" and that he would require a second surgery on July 6, 2016.[22] He would need about one month to recuperate from that second surgery.[23] On May 16, 2016, Manion spoke to Callahan over the phone and informed him that he would be unable to travel until after he returned from the second surgery.[24]

On May 20, 2016, Callahan sent Tracy Nicholas an email telling that employee that Callahan didn't see any positions that would be suitable for Manion on his return.[25] Apparently in preparation for separating Manion, Nicholas prepared talking points for a future conversation with Manion that explained he would not be considered for the subject matter expert position at least in part because Manion would not be able to travel.[26] Nicholas also testified that Plaintiff Manion's inability to travel was part of the reason he was not hired as the subject matter expert.[27] Callahan, on the other hand,

---

[18] Doc. 25-2 at 22.
[19] Doc. 23-1 at 19, 31–32; Doc. 25-5 at 28.
[20] *See id.* at 29–30.
[21] Doc. 25-2 at 16.
[22] *Id.*
[23] *Id.*
[24] *See* Doc. 23-1 at 234–35 (describing the call as having occurred sometime after the May 16 email sent and before Manion's return to work). Counsel suggests in his questioning that the conversation occurred *before* May 16 because Plaintiff returned to work on the 17th, *id.* at 235, but Callahan testified just before that the conversation occurred after Plaintiff sent his May 16 email, *id.* at 234. Reading this testimony in context and in the light most favorable to Manion, the conversation occurred after the email but before Manion's return to work.
[25] Doc. 25-2 at 27.
[26] *Id.* at 17–18.
[27] Doc. 23-4 at 65–67.

-3-

testified that the company could have accommodated Manion's inability to travel.[28]

On June 9, 2016, Demandware informed Manion that his employment would terminate on August 26, 2016.[29] On July 6, Manion told Demandware that he believed his termination was motivated, at least in part, by his health condition and that he would like to be considered for any available positions.[30]

In July 2016, Defendant Salesforce acquired Defendant Demandware.[31]

Manion returned to work on August 22, 2016, and his employment was terminated on September 16, 2016.[32]

Plaintiff Manion filed this lawsuit against Demandware and Salesforce (which has purchased Demandware) on September 7, 2017.[33] He alleges that Demandware (1) interfered with his FMLA leave, (2) retaliated against him as a result of his decision to take FMLA leave, (3) discriminated against him as a result of his disability in violation of the ADA, (4) failed to accommodate his disability under the ADA, and (5) retaliated against him for asserting his rights under the ADA.[34]

Defendants now move for summary judgment.[35] Plaintiff opposes.[36] Defendants reply.[37]

Defendants also move to strike the declaration of Mark Rodinelli, alleging that Plaintiff Manion failed to properly disclose the possibility he would be a witness and that significant portions of his testimony are otherwise inadmissible.[38]

---

[28] Doc. 23-1 at 263–64.
[29] Doc. 23-3 at 201.
[30] Doc. 24-6 at 1.
[31] Doc. 23-2 at 10. Because it does not appear from the record that there was any change of personnel as a result of Demandware's acquisition by Salesforce and Demandware was Plaintiff Manion's employer throughout most of the events at issue here, the Court will refer to his employer as "Demandware" for simplicity's sake unless there is a reason to refer to Salesforce as well.
[32] *See id.* at 3–5.
[33] Doc. 1.
[34] *Id.* at ¶¶ 14–38.
[35] Doc. 21.
[36] Doc. 25.
[37] Doc. 27.
[38] Doc. 26. Plaintiff opposes. Doc. 28. Defendants reply. Doc. 29.

## II. MOTION FOR SUMMARY JUDGMENT

The Court first addresses the Defendants' motion for summary judgment. The Court denies the motion except as to the failure to accommodate claim.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[39] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[40]

Once the moving party has done so, the non-moving party must set forth specific record facts—not mere allegations or denials in pleadings—showing a triable issue of fact.[41] The non-moving party must show more than some doubt as to the material facts in order to defeat a motion for summary judgment.[42] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[43]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible record evidence directly contradicts that version.[44] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[45]

### B. FMLA Retaliation Claim

FMLA retaliation claims "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."[46] An employer is prohibited from "us[ing] the

---

[39] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[40] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[41] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[42] *Id.* at 586.
[43] *Killion*, 761 F.3d at 580 (internal citations omitted).
[44] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[45] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).
[46] *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (emphasis in original).

taking of FMLA leave as a negative factor in employment actions,"[47] or "in any other manner discriminat[ing] against any individual"[48] who utilizes FMLA leave. The employer's motive for taking the adverse employment action is relevant to FMLA retaliation claims.[49]

To establish a prima facie retaliation case, a plaintiff must show that (1) he engaged in an FMLA-protected activity; (2) the employer knew the employee was exercising his FMLA rights; (3) after gaining such knowledge, the employer took an adverse employment action against him; and (4) there was a causal connection between the employee's FMLA activity and the adverse action.[50]

Under the *McDonnell Douglas* framework, after a plaintiff has made a prima facie case, the burden shifts to the defendant to offer a non-retaliatory reason for the adverse action.[51] The burden then shifts back to the plaintiff to show that the proffered reason is mere pretext.[52]

### 1. Prima Facie Case

"The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."[53]

The Defendants here do not dispute that Plaintiff Manion took FMLA leave after his initial and follow-up surgeries, that they knew he planned to take and took that leave, and that he suffered an adverse employment action after taking leave.[54] Rather, they contend Manion has not shown a causal connection between his use of FMLA leave and his termination.[55] The Court disagrees. Sufficient evidence supports a causal connection between the FMLA use and the adverse employment action.

---

[47] 29 C.F.R. § 825.220(c); *Arban*, 345 F.3d at 403.
[48] 29 U.S.C. § 2615(b).
[49] *Seeger*, 681 F.3d at 282.
[50] *Id.* at 283.
[51] *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).
[52] *Id.*
[53] *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).
[54] *See* Doc. 21-1 at 15–19.
[55] *Id.*

Case No. 1:17-cv-1886
Gwin, J.

It appears that—viewing the evidence in the light most favorable to the Plaintiff—Defendant Demandware intended to place Manion in the Store subject matter expert position until he informed Callahan that he would need additional leave to undergo a second surgery.[56] Demandware then abruptly changed course and determined that there were no suitable positions for Plaintiff Manion at Demandware. The temporal proximity between the decision not to place Manion in the expert role and Callahan's being informed of Manion's need for FMLA leave is alone sufficient evidence to establish causation for a prima facie case of retaliation.[57]

Defendants protest that Plaintiff Manion has admitted that his decision to take FMLA leave was not the basis for his termination.[58] They base that argument on this exchange from Manion's deposition:

> COUNSEL: And so how -- how did the company discriminate against you based on the FMLA and the disability?
> MANION: Well, the fact that I was let go.
> COUNSEL: Okay. Anything else?
> MANION: I was let go for the disability, so.
> COUNSEL: But not for taking FMLA leave?
> MANION: No.[59]

The problem with that argument, however, is that what Manion meant by that "no" is ambiguous. He could have meant, as Defendants contend, that he did not believe that his FMLA leave was the basis for his firing ("No[, the company did not fire me for taking FMLA leave.]"). Or he could have been disagreeing with the premise of defense counsel's question ("No[, I disagree. My taking FMLA leave was a reason for my termination.]"). Indeed, if Manion had answered "yes," to the question, his response would have been similarly ambiguous.

---

[56] *See supra* at 3.
[57] *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409-10 (6th Cir. 2014) (finding causation where two months or less passed between expiration of FMLA leave and termination); *Clark v. Walgreen Co.,* 424 F. App'x. 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007) (causal connection established where defendant terminated plaintiff on same day she returned to work and three months after her FMLA request).
[58] Doc. 21-1 at 16–17.
[59] *Id.* (quoting Doc. 21-2 at 3).

At this stage of the litigation, the Court must read the transcript in the light most favorable to Manion. Because defense counsel did not clarify Manion's deposition response, that means interpreting his answer to mean that he disagrees with the premise of defense counsel's question. Moreover, that interpretation better comports with Manion's behavior throughout the litigation.

### 2. Pretext

As in most retaliation cases, then, this case turns on whether Plaintiff Manion has presented sufficient evidence to create a genuine issue of material fact as to whether the non-discriminatory reasons Defendants have proffered for his termination are merely pretextual. The Court finds that he has.

An FMLA plaintiff can show that a proffered reason for termination was pretextual by establishing that it (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to warrant the termination.[60]

Defendants contend that they fired Plaintiff Manion because his prior position was eliminated and there were no other suitable positions available for him upon his return from medical leave.[61]

#### a. Subject Matter Expert Position

Initially, it is not clear that Plaintiff Manion's position was eliminated at all. There is some reason to think that the subject matter expert position was merely a continuation of what Manion was already doing: selling the Store product.

Store, as discussed above, was a developmental product when Manion started selling it.[62] It follows that, at some point, it would progress past the development stage and be sold by Defendant Demandware's national sales team alongside Demandware's other products.

Training sales representatives and advising them on selling the new product is a natural part

---

[60] *Seeger*, 681 F.3d at 285.
[61] Doc. 21-1 at 17–19.
[62] *See* Doc. 25-5 at 16.

of that process. And who better to do that than a member of the Strategic Team that had been successful in selling Store to charter customers?

In that sense, transitioning from a member of the Strategic Team to the subject matter expert for the national sales team seems like a natural evolution of Plaintiff Manion's position—not necessarily the creation of a new one. The fact that both Manion and his supervisor seemed to assume that he would transition in to the expert role[63] supports that idea.

But even if that were not the case, and the expert position was a totally new position, it is not clear that Defendant Demandware had valid, non-retaliatory reasons for declining to give the position to Plaintiff Manion.

Plaintiff Manion points to evidence from which the jury could conclude that Demandware's reasons for not employing Manion has a subject matter expert were pre-textual. As noted above, there was a close temporal proximity between when Callahan learned of Manion's need for further FMLA leave and the decision not to offer the position to Manion.

Moreover, Defendants apparently told Manion that one reason he was not given the position was that the expert position required travel,[64] but Callahan later testified that Demandware could have accommodated Manion's temporary travel restrictions.[65] The inconsistency between Demandware employees and documents as to the reasons for refusing to place Manion in the expert position could cause a jury to find the true reason was his decision to take FMLA leave.

Finally, there is sufficient record evidence to allow a jury to conclude that Demandware's claim that the subject matter expert position was outside Manion's skillset is pre-textual. For one thing, the jury could believe the evidence suggesting that Callahan was excited about placing Manion in the expert position until he learned that Manion required additional leave. For another, it is

---

[63] Doc. 24-3 at 10–11.
[64] *See* Doc. 25-2 at 18.
[65] Doc. 23-1 at 263–64; *see also* Doc. 25-3 at 49; Doc. 25-5 at 2–3.

difficult to believe that, having allowed Manion to present Store to customers to persuade them to be early adopters and having recognized him for his success in that endeavor, Demandware was suddenly uncomfortable allowing him to train and support sales representatives unfamiliar with the Store product. Or, at least, the jury might not find that argument credible.

### b. Sales Executive

On July 6, 2016, Manion asked to be considered for any available position after learning that he would not receive the subject matter expert position.[66] He was not given any position.

Plaintiff Manion contends that decision, and in particular the decision to deny him a sales position was based on his decision to take FMLA leave.[67] Defendants contend that Manion's lack of sales experience was the reason he was not hired as an account executive.[68]

But it appears from the record that, as late as March 31, 2016, Demandware considered transitioning Manion to a "Sales Executive" position in Ohio.[69] Moreover, as discussed above, Demandware not only trusted Manion to sell its brand new product to early adopters (a fairly important sales role, one would think), it admitted him to its President's Club as a reward for his success in doing so. It would seem, to the Court at least, that selling Demandware's established product lines would be less difficult than convincing companies to adopt new and potentially glitch-containing developmental products. It follows that a jury might disbelieve Demandware's claim that it did not think Manion was a skilled enough salesman.

Demandware points out that, prior to his 2014 transfer, Manion received a negative performance review while he was a regional sales director.[70] But, at that time, Manion had recently undergone brain surgery and his supervisor admitted that, at least at the time, he believed that the

---

[66] *See* Doc. 23-3 at 201, 203–04; Doc. 24-6 at 1.
[67] Doc. 25 at 18–19.
[68] Doc. 21-1 at 18.
[69] Doc. 25-2 at 5, 8.
[70] Doc. 21-1 at 6–7.

region's sales underperformance should not be entirely attributed to Manion.[71]

### c. Defendants' Contrary Evidence

The Defendants present a significant amount of evidence that they believe supports their claim that they had non-FMLA-related reasons for terminating Manion's employment. For instance, they point out that that they extended Manion's employment to allow him time to find another job (even after he returned from leave and his former position was terminated), that Callahan dispute's Manion's account of the April 26 phone call, and so on.[72]

And it may be that the jury will be persuaded by this contrary evidence at trial. However, having concluded that Plaintiff Manion has presented sufficient evidence to create a genuine dispute of material fact as to his retaliation claim, the Court's analysis is at an end. It is for the jury to weigh the competing evidence presented by the parties.

For those reasons, the Court **DENIES** the motion for summary judgment as to the FMLA retaliation claim.

## C. FMLA Interference Claim

FMLA interference claims impose liability on employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA provision.[73] To survive summary judgment, Plaintiff must show (1) he was an eligible employee under the FMLA; (2) his employer was a covered employer under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave notice to his employer of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled.[74]

Only the fifth prong is in dispute here.

Upon return from FMLA leave, an eligible employee is entitled to be restored to his original

---

[71] Doc. 25-5 at 18–19; *see* Doc. 23–1 at 106–07.
[72] Doc. 21-1 at 19; Doc. 27 at 16–17.
[73] 29 U.S.C. § 2615.
[74] *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (quotations omitted).

position or to an equivalent position.[75] The employer's intent is not relevant to whether it interfered with an employee's FMLA-created right to reinstatement following leave.[76]

Nevertheless, an employee's right to reinstatement is not absolute. "'[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request.'"[77]

Therefore, if an employer claims that an employee would have been discharged regardless of his FMLA leave, the employee must present sufficient evidence to rebut that contention.[78] The Sixth Circuit applies the *McDonnell Douglas* burden-shifting framework from the FMLA retaliation analysis to the FMLA interference analysis.[79]

Because the Court has already concluded that Plaintiff Manion shows a genuine dispute of material fact as to his retaliation claim, the Court will also **DENY** the motion for summary judgment as to the interference claim.

### D. ADA Claims

Plaintiff Manion also brings claims against the Defendants for discrimination, failure to accommodate, and retaliation under the ADA.

#### 1. Discrimination

To establish "a prima facie case of disability discrimination, a plaintiff must show that (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his

---

[75] 29 U.S.C. § 2614(a)(1). Thus it does not matter, despite Defendants' argument to the contrary, that Plaintiff received his full FMLA leave. He was entitled to reinstatement to the same or an equivalent position upon his return.
[76] *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (quotations omitted).
[77] *Id.* (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).
[78] *Id.*
[79] *Donald*, 667 F.3d at 762.

disability."[80]  Once a plaintiff has made out a prima facie case, it is up to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action.[81]  If it can, the plaintiff then must show that the proffered reason is merely a pretext for discrimination.[82]

Here, the Defendants do not contest that Plaintiff Manion suffered from a disability under the ADA.[83]  Moreover, the Plaintiff has provided evidence showing that a reason he was not offered the subject matter expert position was that he was temporarily unable to travel as a result of his medical condition.[84]  And Callahan testified that Plaintiff could have been accommodated in the specialist position regardless of his inability to travel.[85]

That makes out a prima facie case of discrimination.  While Defendant, as discussed previously, contends that there were other reasons for not giving Manion the expert position, the Court has already concluded that there is a genuine dispute of material fact as to whether those explanations are pre-textual.

For those reasons, the Court **DENIES** the summary judgment motion as to the ADA discrimination claim.

### 2. Failure to Accommodate

Plaintiff's failure to accommodate claim is essentially identical to his ADA discrimination claim: he claims that the Defendants violated the ADA by refusing to hire him as a subject matter expert because of his temporary, medically-caused inability to travel.  But Plaintiff Manion failed to include this claim in his EEOC charge.[86]

Because failure to accommodate and discrimination claims are analytically distinct, alleging

---

[80] *Bush v. Compass Group USA, Inc.*, 683 F. App'x. 440, 445 (6th Cir. 2017) (quoting *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014)).
[81] *Id.*
[82] *Id.*
[83] Doc. 21-1 at 16 n.8.
[84] *See* Doc. 25-2 at 18.
[85] Doc. 23-1 at 263–64.
[86] Doc. 21-5 at 1.

Case No. 1:17-cv-1886
Gwin, J.

one in an EEOC charge is not sufficient to allow a plaintiff to later pursue a civil case based on the other.[87] The Court will therefore **GRANT** the motion for summary judgment on the failure to accommodate claim.

### 3. Retaliation

The standard for retaliation claims under the ADA is nearly identical to that for FLSA retaliation. The Plaintiff has the initial burden of making out a prima facie case that (1) he was engaged in a protected activity under the ADA, (2) the employer knew of the activity, (3) the employer took an adverse action against the plaintiff, and (4) the adverse action was caused by the protected activity.[88] Once Plaintiff Manion meets that burden, the Defendant must come forward with a non-retaliatory reason for the adverse action.[89] If it does, Manion must show that the proffered reason is merely a pretext for retaliation.[90]

The Defendants do not dispute that Plaintiff Manion engaged in protected activity.[91] And the Court has already found that Plaintiff Manion has created a genuine dispute of material fact as to whether the various reasons they have given for Manion's termination are pre-textual. As a result, the Court will **DENY** the motion for summary judgment as to the ADA retaliation claim.

## II. MOTION TO STRIKE

The Court next addresses Defendants' motion to strike. Defendants first contend that the Rodinelli Declaration should be stricken because Plaintiff Manion failed to list Rodinelli in Plaintiffs' Rule 26 disclosures as an individual who might have discoverable information.[92] They also contend that various parts of his declaration should be stricken for other reasons.[93]

---

[87] *See Phipps v. Accredo Health Grp., Inc.*, No. 2:15-cv-02101, 2016 WL 3448765, at *15–16 (W.D. Tenn. June 20, 2016).
[88] *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).
[89] *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).
[90] *Id.*
[91] *See* Doc. 21-1 at 20–22.
[92] Doc. 26-1 at 2–5.
[93] *Id.* at 5–12.

The Court has not relied on Rodinelli's declaration in reaching its summary judgment decision, instead concluding that most of the summary judgment motion should be denied even without that declaration. The declaration also would not affect the Court's decision on the failure to accommodate claim. As a result, the Court will, at this time, **DENY AS MOOT** the motion to strike.

### IV. CONCLUSION

For all of those reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. The Court **DENIES AS MOOT** Defendants' motion to strike.

The case will proceed to trial as scheduled on all of Plaintiff Manion's claims except the ADA failure to accommodate claim.

IT IS SO ORDERED.

Dated: May 29, 2018          *s/ James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE